The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. The only case for argument this morning is 20-1570, DSS Technology Management v. Apple. Mr. Buther, whenever you're ready. Thank you, Your Honor. May it please the court, I am Eric Buther on behalf of DSS. The issues on appeal are two. One is whether the district court abused its discretion in striking DSS's joint report on infringement. And two is whether it abused its discretion by denying DSS's motion for leave to amend its infringement contentions. I would like to address the second issue first since the denial of the leave to amend is a predicate to its decision to strike the joint report. So if that's okay with the court, I'd like to proceed in that manner. Regarding the denial of DSS's motion for leave, the crux of the court's decision was that DSS did not exercise diligence in seeking leave. And we think the court abused its discretion in reaching that conclusion largely because of Apple's discovery misconduct in this case. DSS sought leave to amend its contentions to assert a theory of infringement that was based on what we call the Broadcom proprietary mode. Apple's use of that mode was a fact that Apple concealed from DSS for five years. And in fact, there was a specific contention interrogatory served on Apple that asked it to state all factual and legal grounds for its denial that it infringed any of the asserted patents. And Apple provided DSS with an incomplete and misleading answer to that interrogatory seeking this very information. And the district court essentially gave no credit to that discovery misconduct in assessing the delay that it found led to a lack of diligence. DSS sought leave to amend promptly after Apple finally disclosed its use of the Broadcom proprietary mode. And the proprietary mode, Broadcom proprietary mode theory of infringement differed very little from the Bluetooth sniff mode and sniff substrating mode theories of infringement that were disclosed in DSS's picks. The difference between the two is not relevant to the issues of infringement or validity in this case. So given that Apple or DSS did that, the issue is what caused it to wait until the middle of 2019 to seek that amendment. And that is because Apple, with all due respect, concealed its use of that mode of wireless communication and led DSS to believe that the mode that it used was or that the DSS sniff mode or the sniff mode and the sniff substrating mode were the modes that were used by Apple. This is Judge Chen. Yes, sir. Yes, Judge. As you know, we're in appellate court here. And I guess it's unclear to me how can we conclude that Apple's behavior here rose to the level of discovery misconduct when the court below never made such a finding and you never filed a motion seeking to sanction Apple for any kind of discovery misconduct. So how are we at this stage, given the posture of the case, able to so easily conclude such a thing and thereby overturn the district court's decision here? Well, we certainly argued in the court below that Apple's discovery misconduct was what lulled DSS to sleep, if you will, and to not appreciate that Apple used this Broadcom mode instead of the BT sniff mode or sniff subrating mode. And this court in 02 did recognize that, quote, misconduct, misleading conduct by the opposing party would, under some circumstances, justify delay. So, therefore, there was no point in filing a motion to compel because it wasn't as if they didn't answer. They gave a misleading and incomplete answer, and only Apple knew that it was misleading and incomplete. What was it about their answer that was misleading? As I understood it, they essentially offered a blanket denial of infringing any relevant claim limitations. Right. They never said that Apple did not use the BT sniff mode or sniff subrating mode. They simply said, we don't infringe. And they had a duty, of course, to answer that interrogatory and to supplement that interrogatory with any information that showed that the original answer was incomplete or wrong. And so, therefore, it was Apple's duty under Rule 26E to supplement its incomplete and misleading answer. It was misleading because it didn't raise the issue of whether or not Apple used the BT sniff mode or sniff subrating modes. It just said nothing on that. And that is not even a half-truth. That's a no-truth. But because they didn't raise that issue, which they finally did in a supplemental answer in June of 2019, so they knew they had a duty to supplement. They finally honored that duty five years after the interrogatory was served and answered. And so this court is certainly capable of saying Apple cannot complain about the delay, to the extent there was a delay, that was the result of its own misconduct in giving an incomplete and misleading answer. It would have been very easy to say, hey, you should dismiss this case because we don't use BT subrating or BT sniff mode. It didn't do that until five years later. And during that time, DSS, when the case wasn't stayed, DSS engaged in many efforts to find out exactly what was the mode used in the Apple products that accounted for the low-duty cycle and the regular cycle for communicating between the peripherals and the computing device. And so this court does have the power to take a look at the record and see that that delay, that five-year delay, absence of stays, was due entirely to the fact that Apple hit the ball. And once Apple said, check the Broadcom code, it didn't even say in January of 2019, it said, oh, the Broadcom source code might be what you're looking for. It said that, and that's in the record in a letter, yet it still didn't mention that it used the Broadcom mode rather than the sniff mode, sniff substrating mode. It kept that fact under wraps until virtually the end of discovery. And then when finally Apple let the cat out of the bag in the deposition of Giles, and when it told in January of 2019 that the Broadcom might have a source code that might be relevant, DSS was very prompt in taking depositions, seeking documents, and finding out exactly what the Broadcom… This is Judge Proust, and I guess I'm just following up with what Judge Chen called out. The story you're telling is one that the district court lives with. I mean, district courts in our system manage all these discovery disputes and follow the case. I mean, I have a timeline in my bench book here, and it spans years and years and various exchanges. And do you appreciate that it's difficult for us at the appellate level to dislodge the judge's conclusions when he lived with this case from day to day? And you could have come to him if there were a problem with discovery. Presumably, all of these concealment issues were raised with him. He was there at the time to assess the validity of those. And it's just really difficult at the appellate level for us to second-guess under a very deferential standard of review the district court's judgments about these matters. Well, I do appreciate that appellate courts do not like to because they're not really assigned the duty of engaging in that kind of, as you call it, second-guessing. But that's not what's going on here. I mean, what happened is on paper, it's in the records, so there's no credibility issues or other kind of you-had-to-be-there type of an issue for you to determine was there delay and who's responsible for it. The fact, the undisputed fact is that Apple did not disclose these highly important facts for five years, even though it had a duty to do so. And its failure to disclose that it didn't use BT-SNF subrating and that it did instead use the Broadcom proprietary mode, that is undisputed. It didn't disclose that it was five years, and then they finally disclosed it virtually right before the close of discovery. Just to get some clarification here, I mean, doesn't part of the duty fall on you as the party with the burden of proof in this matter to follow up with the opposing party to ferret out just exactly how their products are operating to understand whether or not your initial theory of how their products operate line up with your claim limitation? Well, two things, actually. If you get this kind of blanket denial, then it seems it stands to reason that then the next move is on you to chase after them a little bit to try to nail down exactly what is it that they're using to perform certain operations. I guess I would say three things in that regard is one is that DSS did aggressively pursue discovery of Apple and Broadcom to get to the bottom of things. It was not on notice, an investigation notice, if you will, of anything from Apple that would lead DSS to believe that Apple did not use Bluetooth-SNF substrating or that it did use a third-party supplier's mode of wireless communication. So we did ask for discovery. We did get answers, but there was nothing to indicate to us that we were wrong about that. I think the district court kind of covered that, right? Didn't he determine that the source code and other documents Apple produced in 2014 should have clued you into the fact that they used the Broadcom proprietary mode or at least that they didn't use the Bluetooth-SNF substrating mode? And he also said, I think, given that it was an optional feature, you should have been on high alert to confirm that Apple actually uses it. So we didn't ignore your argument. He dealt with it, and I'm having a little bit of a hard time seeing that we can conclude that he abused his discretion with his findings or conclusions in that regard. Okay, I'm sorry. Go ahead, Your Honor. The buzz went on, but please answer my question. Oh, yes. The problem is that he did say that he had reached that conclusion, but the documents he cites do not support at all the notion that the one file and the one folder in the source code that made a vague reference to a – and I can't use the phrase because it's confidential, but the acronym would be the AM. This AM word or phrase is meaningless to anybody but Broadcom and Apple. It is confidential. It wasn't available to the public. So the mere use of that word, that phrase, didn't put a – was not an indication of anything. It didn't mean anything to anybody. And so that was not an – the bill of materials simply showed that a Broadcom chip was used in the device. That didn't tell us about what mode was being used, and it wasn't subrating Bluetooth, but it was the Broadcom method. And then they also argue in their briefs, which the court didn't find that you could have tested the devices. That wouldn't have led to the discovery of any facts that would lead DSS to believe that it didn't use the subrating mode and did use the Broadcom mode. With that, I will turn it over to Apple's counsel. Can I just ask a question? Just generally, were you free after this action to refile? Boy, that's an interesting question. Never thought about that. Probably not because a judgment was entered of non-infringement, and so I would believe that that was the end of the road. I mean, five years had already gone by anyway. We would have certainly taken a haircut on damages, but I don't think we could have filed that because of the final judgment of non-infringement, and res judicata would have prevented us from re-litigating the issue. And I'm sure Apple would have made that argument if we tried. All right. Thank you. Mr. Panikowski, whenever you're ready. Good morning, Your Honors. The district court's case management rulings were well within its discretion, and the judgment should be affirmed. First, the district court reasonably found that DSS failed to show good cause to add its new Broadcom proprietary mode infringement theory after fact discovery had closed. The district court properly identified numerous reasons why DSS should have acted sooner to formulate this theory. Its finding that DSS failed to show diligence was not an abuse of discretion. The court also properly found prejudice to Apple, and this is another independent ground for affirming on this issue. Second, Your Honors, the district court reasonably found that SNF mode 1.0 only was a new infringement theory that DSS raised for the first time far too late in the case. In May 2014, DSS served amended infringement contentions based only on SNF subrating mode. SNF subrating mode is an optional functionality that was first introduced in version 2.1 of the Bluetooth standard. Okay, but can I just interrupt you, Mr. Panikowski, because time is short. Yes, Your Honor. It seems to me that you knew all along that you didn't use Bluetooth SNF subrating mode, right? You knew that all along. Your Honor, the record does not indicate that. And part of the reason why the record does not indicate the state of Apple's knowledge on that subject is because, as the district court found, DSS never pressed Apple for more detailed responses to contention interrogatory number one. On June 6, 2014, Apple served its first… …that their infringement contentions only accused the Bluetooth SNF subrating mode and not anything else. Why didn't your response just say you didn't use it? Are you saying that Apple didn't know what it was using? Your Honor, the record simply doesn't enable me to provide an answer to that question because all we know is that in its first supplemental interrogation… Why do we need the record to tell us? I mean, you're representing Apple. You're Apple. So, therefore, you know why you could comfortably claim on behalf of your client that you didn't infringe this limitation. So, I mean, I'd appreciate it if you didn't hide behind that the cold record, this thing that's sitting in a courtroom docket somewhere doesn't reveal the answer. You know the answer. So, what was the answer for why you answered the way you answered when you said you don't infringe this limitation? Your Honor, it is not the case that I personally have that knowledge. In its first supplemental response to contention interrogatory number one on June 6, 2014, Apple told DSS, we do not practice these limitations, including we do not practice the code sequence limitation. From that point onward, DSS never complained that it needed a more detailed response to that contention interrogatory. That response was not incorrect, and it was not incomplete, and Apple never changed its position that it did not practice those limitations. DSS showed consistently throughout the case that it knew how to complain about discovery issues. As one of many examples, on November 8, 2018, at appendix pages 1347 to 1349, DSS sent Apple a very detailed letter complaining about Apple's response to interrogatory number nine. It did not raise any issues related to the contention interrogatory in that letter or in any of its other many discovery letters during that time. Apple did later on supplement its interrogatory responses with additional information that Apple had learned. Your Honor, there's simply no evidence in the record of any discovery misconduct or hiding the ball. There is no finding of that from the district court. There's no record of that from the district court. Your Honor, I do not have the personal knowledge to narrate why Apple responded to discovery requests and took certain actions or didn't take certain actions in discovery along the way of the five plus years of this case. Moreover, the district court was the place for DSS to raise and litigate these issues if it had any concerns about the level of detail that was provided in Apple's June 6, 2014 discovery responses. Your Honors, the elephant in the room that DSS tries to ignore is the fact that they accused an optional feature of the Bluetooth standard. And therefore, as the district court reasonably found, DSS should have been on high alert from even before it filed this lawsuit to test whether Apple actually implemented the SNF sub rating commands that DSS said that Apple did in its May 2014 amended infringement contentions. So, you responded, you supplemented your response to interrogatory one on June 6, 2019, right? Yes, Your Honor, that was our third supplemental response. Okay, and why did you not say earlier what you said there, which is that you don't use Bluetooth SNF sub rating mode? Your Honor, I personally do not know the answer to that question. And that is an issue that if DSS had complained about the level of detail in Apple's contention interrogatory responses, that issue could have been fully vetted at the district court level. We told DSS that we do not infringe and that we do not practice the code sequence limitation all the way back to June 2014. When you look at what DSS did during that time, it chose to back load discovery. And the district court pointed out DSS could have done many, many things to surface these issues earlier and to force Apple to do certain things that perhaps may have led to some earlier supplementation. For example, in addition to pressing the issue if it had been dissatisfied with the level of detail in the contention wrong responses, the district court said that DSS could have followed up with specific technical requests. They could have served an RFA saying, Apple, we're accusing you of using an optional feature of the Bluetooth standard. Do you use that optional feature? They also could have, as the district court found, tried to take an earlier 30B6 deposition. Is that Mr. Giles? Because it seems like that was when the cat came out of the bag in his deposition in May 15, 2019, right? Your Honor, it was in Mr. Giles' deposition that he testified that Apple's products do not use SNF subrating. However, Your Honor, that was not an instance of a cat being let out of the bag. There was no cat being kept in the bag. As DSS itself admitted in its July 19, 2018 discovery letter and at page 56 of its opening brief, it was well known to DSS that Broadcom made the accused chips. And therefore, DSS could have sought discovery from Broadcom much earlier. The other things that DSS could have done are the very things that were done in DSS's expert report late in the case. At pages 954 and 955 of the appendix, DSS experts said, even though Apple didn't produce configuration files for these peripherals, we tested the Apple P91 mouse and Q6 keyboard based on samples we had obtained. And they determined, allegedly, the modes that were used. And they also cited at page 953 of the joint appendix source code configuration files that the base numbers show Apple had produced in 2014. They were able to determine from public sources that Apple did not use SNF subrating commands, as they said in their May 2014 amended infringement contentions. That was not information that was uniquely in the possession of anyone DSS could have and should have. And their experts later did test the Apple products and determined that there are no SNF subrating commands used here. Let me interrupt you just because time is short. This is Judge Proust again. Yes, Your Honor. As you mentioned, I think, at the outset of your argument correctly, the district court had two bases. And one was that it would be prejudicial to Apple. So how would this have been prejudicial to Apple? I mean, it arguably knew all this stuff all along. So why would this have been prejudicial to Apple? Your Honor, as the district court found, it would have been prejudicial to Apple, at least because it was very, very late in the case. And fact discovery had been completed. Claim construction had been completed. And even though, with respect to the Broadcom proprietary mode theory, the district court didn't find that there were specific arguments that Apple would have and could have made, the district court was within its discretion to say it is prejudicial when you're trying to completely change your infringement theory so late in the case. And this court, in cases like Cruz and real-time data, has affirmed findings of prejudice without requiring specific arguments that otherwise would have been made. Your Honor, if I may conclude on one point, unless the court has further questions, it is, again, significant here that Broadcom was the supplier of the accused chips here. And the district court also focused on that issue in addition to the optional nature of the feature of the Bluetooth standard that DSS was accusing as another reason why DSS lacked diligence. Again, the court has focused on Apple's discovery responses, and Apple, again, reiterates that there was no evidence, no finding, and no record of discovery misconduct. There was also another place that DSS should have gone to look for this information, and that was Broadcom. And again, DSS admits that it knew in 2014 that Broadcom was a supplier. However, DSS waited until January 29, 2019, to serve a document subpoena on Broadcom. It also waited until May 20, 2019, to serve a deposition subpoena on Broadcom. When you say they knew in 2014 that Broadcom was a supplier, what does that mean? Your Honor, it means that based on the discovery that Apple produced that year, they knew from a bill of materials at page 1357 of the record that Broadcom supplied the accused chips for at least some portion of the Apple products that they were accusing. And also, Your Honor, at page 56 of DSS's opening brief, DSS says that the fact that the accused devices used a Broadcom chip, quote, was easily ascertained by taking apart the peripherals or from public sources on the internet. Therefore, DSS needing to be on high alert to figure out whether the accused Apple products used this optional feature of the standard, and knowing that Broadcom was a supplier of the accused chips, and therefore Apple itself may not be privy to all of the… How many accused Apple devices are there? Your Honor, I do not know the specific number of models, but the accused products are generally Mac computers. Right, so roughly what order are we talking about? Your Honor, are you asking in terms of numbers of models? Yeah, right. I'm just trying to figure it out because as I understand the bill of lading, it only refers to the usage of a Broadcom chip for one of the accused devices. Correct, Your Honor. That is correct. But we also have DSS's letter on July 19, 2018. That's at pages 1335 to 1342 of the record, and again at 1448 to 1489, where DSS in its letter acknowledges that Broadcom is a supplier and provides a list showing a broader range of products where Broadcom is supplying these chips. And again, in that letter, there's no indication that Apple's response to contention fraud number one was insufficient, but Your Honor, in terms of trying to provide some context for the questions you have asked about what is it that Apple knew at various points in the case, it's important to understand in that context that Broadcom was the supplier of the accused chips and the supplier of the source code with the proprietary mode. And DSS was perfectly able in 2014 and certainly from July 2018 onward to pursue that discovery from Broadcom in order to learn some of the things that this court has asked about with respect to Apple's discovery responses. And even aside from all of that, Your Honor, because they were accusing an optional feature of the standard that they could have and should have and eventually did based on publicly available information determine whether Apple practiced it, there were many, many reasons supporting the district court's proper exercise of discretion in finding that DSS was not diligent and that it was far too late in the case to reinvent itself. Unless there are further questions, thank you, Your Honors. Thank you. Mr. Busser, I think you have several minutes left. Well, thank you. I know you were gracious in letting me roll over. So let me address some of these issues very quickly. One is Apple knew in 2014 that it used the Broadcom proprietary mode and not Bluetooth. There's a 2011 document that Apple produced in April of 2019 that specifically mentioned this. It's cited in our brief. I'm sorry, I don't have the page number. The question is not what Apple knew. It's what you knew or should have known back in 2014. Well, I know. But I'm just addressing the point where I think Judge Chan or Hughes was asking about what Apple knew. They did know. So there's nothing but that. But in that April 2019 production, Apple produced over a million pages of documents that should have been produced back in 2014. That's an example of the discovery misconduct, if you will. That explains why it took as long as it did. But the elephant in the room is the answer to the question of why didn't you disclose this in the interrogatory answer in 2014. The question was asked. And the answer is Apple has no legitimate justification for not disclosing it then only in June of 2019. So the discovery misconduct in the evasive and incomplete misleading answer is plain to see. Two, I hear a lot of reference to this optional feature that was cited in DSS's picks. The district court itself pointed out that that fact does not show that the substrating mode and the SNF mode were not both accused. The court said, referring to version 2.1, it does not exclusively signify operating in BT SNF substrating mode. That's at appendix 29 to 30. And it doesn't indicate that it used the Broadcom mode, of course. So the fact that there were citations to version 2.1 or 4.0, because those modes were backward compatible, if you will, and required the use of SNF mode alone, even the district court didn't buy that one. Thirdly, regarding the documents that the court relied on that were produced in 2014, this is clearly 2020 hindsight. I mean, Apple submitted no evidence that anyone of skill in the art would understand any of those snippets of words to indicate that it used Broadcom and not the SNF mode. And finally, I want to emphasize, the stays that were entered took four years, practically, out of the available time. So that was a major obstacle that both parties had to overcome, plus then Apple switched counsel in late 2018. So anyway, I think that explains why it wasn't DSS's fault for the time it took for DSS to become aware and then seek to amend to add the Broadcom mode. And the SNF mode was already disclosed in the 2014 contentions that set forth in our brief. Thank you very much, Your Honors. Thank you. We thank both sides and the cases submitted. That concludes our proceeding for this morning. Thank you. Thank you very much. The Honorable Court is adjourned from day to day.